IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

ANDREANA RYLES PHIPHER,                    CASE NO.: 13-30910-DHW-13

DEBTOR.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Alabama Housing Finance Authority (hereinafter "Movant") and moves the Court for relief from the automatic stay, in order that it may proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage of Andreana Ryles (hereinafter "Debtor") and as grounds for said motion says as follows:

1. On or about April 11, 2013, Debtor petitioned this Honorable Court for debtor's protection pursuant to Title 11, Chapter 13 of the United States Code.

2. Debtor's real property is encumbered by a mortgage which is attached hereto as Exhibit "A" and specifically made a part hereof.

3. Movant holds a mortgage lien on this real property, commonly referred to in the attached mortgage as 80 Country View Drive, Shorter, Alabama 36075.

4. Cause exists for removing the automatic stay due to the fact that Movant's interest in said property is not adequately protected. 11 U.S.C. § 362(d)(1).

5. Movant avers the mortgage is in default and Debtor is now five (5) months in arrears in post-petition mortgage payments (June 2013 through October 2013), as more fully described on the statement of loan account in the affidavit attached hereto as Exhibit "B."

6. Debtor's failure to make post-petition mortgage payments demonstrates a continuing default; consequently, if Movant is not granted relief from the automatic stay to proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage, it will suffer irreparable injury, loss, and damage.

7. Movant further asserts that the automatic stay should be lifted as such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

8. Movant avers that the fourteen-day stay of Fed. R. Bankr. P. 4001(a)(3) should be waived, as Debtor filed for debtor's protection pursuant to Title 11, Chapter 13 of the United States Code, and as such is on notice of the potential penalties for non-compliance.

WHEREFORE, PREMISES CONSIDERED, Movant prays for the automatic stay to be lifted pursuant to 11 U.S.C. § 362(d) to permit Movant to proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage due to default in payments in accordance with the provisions of said mortgage and the laws of the State of Alabama.

/s/ Bowdy J. Brown
Attorney for
Alabama Housing Finance Authority
Our File No.: 49696.526

OF COUNSEL:
SASSER, SEFTON, BROWN,
TIPTON & DAVIS, P.C.
Post Office Box 4539
Montgomery, Alabama 36103-4539
(334) 532-3400

# CERTIFICATE OF SERVICE

      I hereby certify that I have served a true and correct copy of the foregoing Motion to the parties listed below by placing a copy of the same in the United States Mail first-class, postage prepaid, on this the 18th day of October, 2013.

                                                  /s/ Bowdy J. Brown

Andreana Ryles Phipher
2846 Jan Drive
Montgomery, AL 36116

David Weston
T. David Weston, LLC.
7515 Halcyon Pointe Drive
Montgomery, AL 36117

U.S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Curtis C. Reding
Post Office Box 173
Montgomery, AL 36101

# EXHIBIT A

ALABAMA **NOTE**

Loan Number :

FHA CASE NO.

July 21, 2000
[Date]

80 COUNTRY VIEW DR, SHORTER, AL 36075
[Property Address]

1. **PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
NEW SOUTH FEDERAL SAVINGS BANK

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of EIGHTY-NINE THOUSAND EIGHT HUNDRED FIFTY-FOUR DOLLARS AND 00/100      Dollars
(U.S. $    89,854.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of
Seven And Fifteen Hundredth(s)
percent (    7.150    %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   (A) Time
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on September, 2000. Any principal and interest remaining on the first day of August, 2030 will be due on that date, which is called the "Maturity Date."
   (B) Place
   Payment shall be made at
   210 AUTOMATION WAY
   BIRMINGHAM, ALABAMA 35210
   or at such other place as Lender may designate in writing by notice to Borrower.
   (C) Amount
   Each monthly payment of principal and interest will be in the amount of U.S. $    606.88
   This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE                                                                                                  6/96

ITEM 6432L1 (9606R)                    (Page 1 of 3 pages)                    GREATLAND ■
                                                                              To Order Call: 1-800-530-9393 □ Fax 616-791-1131
Eastern
Software
CORPORATION

Case 13-30910    Doc 43    Filed 10/18/13    Entered 10/18/13 13:59:29    Desc Main
                        Document      Page 5 of 20

(D) **Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge   ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

(A) **Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

(B) **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____/s/ Andreana Ryles_____ (Seal)  _____ (Seal)
ANDREANA RYLES                      -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                                    -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                                    -Borrower                                    -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE PAY TO THE ORDER
OF ALABAMA HOUSING FINANCE AUTHORITY

NEW SOUTH FEDERAL SAVINGS BANK
BY _____/s/_____
MARY GUINED, Assistant Vice President

Without Recourse:

Pay to the Order of:
_____/s/ Kathy Boston_____
Alabama Housing Finance Authority
Kathy Boston
Servicing Manager

PAY TO THE ORDER OF
SOUTHTRUST MORTGAGE CORPORATION
WITHOUT RECOURSE

_____/s/ Michael J. King_____
Michael J. King
Single Family Administrator
Alabama Housing Finance Authority

PAY TO THE ORDER OF

ALABAMA HOUSING FINANCIAL AUTHORITY
_____
Without Recourse

SOUTHTRUST MORTGAGE CORPORATION

By: _____/s/ Vanessa A. Mencer_____
Vanessa A. Mencer
Assistant Secretary

ITEM 6432L3 (9506R)                    (Page 3 of 3 pages)                    GREATLAND ®
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

```
MORT        498    217
Recorded In Above Book and Page
    08/14/2000 12:26PM
       Alfonza Menefee
       Judge of Probate
         Macon County

Mort Tax         134.85
SPJ Fee            7.00
Recording Fee     25.50
TOTAL            167.35
```

------[Space Above This Line For Recording Data]------

# MORTGAGE

FHA CASE NO.

THIS MORTGAGE ("Security Instrument") is given on  July 21, 2000
The grantor is   ANDREANA RYLES, AN UNMARRIED WOMAN

("Borrower"). This Security Instrument is given to
NEW SOUTH FEDERAL SAVINGS BANK
which is organized and existing under the laws of THE UNITED STATES OF AMERICA , and whose address is
210 AUTOMATION WAY
BIRMINGHAM, AL 35210

("Lender"). Borrower owes Lender the principal sum of
EIGHTY-NINE THOUSAND EIGHT HUNDRED FIFTY-FOUR DOLLARS AND 00/100
Dollars (U.S. $     89,854.00    ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
August  1, 2030       . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in   MACON                                                                          County, Alabama:

Lot 11 according to the Map of Oak Woods Plat B, as said Map appears
of record in the Office of the Judge of Probate of Macon County, Alabama
in Slide 199 of plat and maps.

The proceeds from this mortgage loan have been applied toward the purchase
price of the above described property, and this is, therefore, a purchase
money mortgage.

Attached hereto and incorporated herein by reference is the Alabama
Housing Financing Authority FHA Tax-Exempt Financing Rider.



which has the address of   80 COUNTRY VIEW DR                              SHORTER
                                      [Street]                              [City]
Alabama      36075            ("Property Address");
            [Zip Code]

FHA ALABAMA MORTGAGE
                                                                                      6/96
ITEM 6591L1 (9609RA)                                                          GREATLAND
                               (Page 1 of 6 pages)       To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131
Eastern
Software
CORPORATION

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

Recorded In MORT BK 498 PG 218, Alfonza Menefee, Judge of Probate, Macon County 08/14/2000 12:26PM

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Recorded In MORT BK 498 PG 219, 08/14/2000 12:26PM
Alfonza Menefee, Judge of Probate, Macon County

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.
9. **Grounds for Acceleration of Debt.**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.
10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.
11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.
12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

ITEM 6584L4 (8606RA)     (Page 4 of 6 pages)     GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

Recorded In MORT BK 498 PG 220, 08/14/2000 12:26PM
Alfonza Menefee, Judge of Probate, Macon County

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in MACON County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to,

Recorded In MORT BK 498 PG 221, Alfonza Menefee, Judge of Probate, Macon County 08/14/2000 12:26PM

reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Graduated Payment Rider  ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☒ Other [Specify] TAX EXEMPT FINANCING RIDER

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____Andreana Ryles_____ (Seal)
ANDREANA RYLES -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness: _____

Witness: _____

STATE OF ALABAMA,                                County ss: Montgomery

On this  21st  day of  July  2000  , I, a Notary Public in and for said county and in said state, hereby certify that  ANDREANA RYLES  , whose name(s)  is  signed to the foregoing conveyance, and who  is  known to me, acknowledged before me that, being informed of the contents of the conveyance,  she  executed the same voluntarily and as  her  act on the day the same bears date.

Given under my hand and official seal of office this the  21st  day of  July  2000

My Commission expires: 5/5/04

_____
C. Lanier Branch          Notary Public

This instrument was prepared by
Lanier Branch, P.C.

ITEM 6584L6 (9606RA)         (Page 6 of 6 pages)         GREATLAND ®
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

Recorded In MORT BK 496 PG 222, 08/14/2000 12:26PM
Alfonza Menefee, Judge of Probate, Macon County

Case 13-30910   Doc 43   Filed 10/18/13   Entered 10/18/13 13:59:29   Desc Main
Document      Page 13 of 20

Appendix 30

ALABAMA HOUSING FINANCING AUTHORITY
Single-Family Mortgage Revenue Bond Program

## FHA TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is incorporated into and shall be deemed to amend and supplement the mortgage of the same date given by the undersigned ("Borrower" or "Mortgagor") to ("Lender" or "Mortgagee") and covering the property described in the Mortgage and located at 80 COUNTRY VIEW DR SHORTER AL 36075 . In addition to the covenants and agreements made in the Mortgage, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors and assigns as may be separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax Exempt Financing Rider, may require immediate payment in full of all sums secured by this Mortgage if:

(a) All or part of the property described in the Mortgage is sold or otherwise transferred (other that by devise, decent or operation of law) by Mortgagor to a purchase or other transferee:

(i) Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143 and (i)(2) of the Internal Revenue Code; or

(ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in section 143(d) and (i)(2) of the Internal Revenue Code (except that ("100 percent") shall be substituted for "95" percent or more "where the latter appears in Section 143(d)(i): or

(iii) At an acquisition cost which is greater that 90 percent of the average area purchase price (greater that 110 percent for targeted area residences, all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) Who has a gross family income in excess of 115% of the applicable median family income (140% of the applicable median family income for a purchase or transferee or a residence in a target area), except that 100% and 120% shall be substituted for 115% and 140%, respectively, if the purchaser or other transferee has a family or fewer than 3 individuals, all as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the Mortgage without prior written consent of Lender or its successors or assigns described at the beginning of this Tax Exempt Financing Rider, or

(c) Mortgagor omits or misrepresents a fact that is material, including without limitation, with respect to the provisions of Section 143 of the Internal Revenue code in an application for the loan secured by this Mortgage.

References are to the 1986 Internal Revenue code in effect on the date of execution of the Mortgage and are deemed to include the implementing regulations.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

IN WITNESS WHEREOF, the Mortgagor has executed this Tax-Exempt Financing Rider and Addendum on this 21st day of July , 2000

Signature: _Andreana Ryles_
ANDREANA RYLES

Signature: _____

State of Alabama, County of Montgomery

I, the undersigned, a notary public in and for said county, in said state, hereby certify that Andreana Ryles _____ signed the foregoing Rider and know to me, acknowledged before me on this day that, being informed of the contents of the foregoing Rider, executed the same voluntarily on the date the same bears date.

Given under my hand and official seal this 21st day of July 2000.

(Seal)
Notary Public
My Commissions expires: 5/5/04    C. Lanier Branch
83
Revised 11/95

Recorded In MORT BK 498 PG 223, 08/14/2000 12:26PM
Alfonza Menefee, Judge of Probate, Macon County

Appendix 31

## ASSIGNMENT OF MORTGAGE

*being re-record in order to record the legal description with the Assignment.

STATE OF ALABAMA

___MACON___ COUNTY

FOR VALUE RECEIVED, the undersigned __NEW SOUTH FEDERAL *__, organized and existing under the laws of the United States of America, does hereby GRANT, BARGAIN, CONVEY, ASSIGN AND DELIVER unto Alabama Housing Finance Authority, a corporation, its successors and assigns, that certain mortgage executed by ANDREANA RYLES, AN **, to NEW SOUTH FEDERAL *, in the principal sum of $ _89,854.00_, dated the _21ST_ day of ___JULY___, 20_00_, and filed for records on the ___1st___ day of ___August___, 20_00_ in the office of the Judge of Probate of ___MACON___ County, Alabama, in Mortgage Book No. _NO2_, on page No. _217_, together with the debt thereby secured and the note therein described and all interest of the undersigned in to the lands and property conveyed by said mortgage.

TO HAVE AND TO HOLD unto the said Alabama Housing Finance Authority, its successors and assigns, FOREVER.
** UNMARRIED WOMAN

IN WITNESS WHEREOF, the said __NEW SOUTH FEDERAL*__, has caused this instrument to be executed in its name by __LEIGH PUTMAN__, its __ASST. VICE PRESIDENT__ and its corporate seal to be hereto affixed and attested by __LEIGH ANN FLOYD__, its __ASST. SECRETARY__, both of whom are thereunto duly authorized, this the _4TH_ day of ___AUGUST___, 20_00_.

*SAVINGS BANK, a Federally Chartered Savings Bank

(Corporate Seal)

Attested by: _[signature]_
Name, Title LEIGH ANN FLOYD
Asst. Secretary

NEW SOUTH FEDERAL SAVINGS BANK, a Federally Chartered Savings Bank
Lender's Name

By: _[signature]_
Name, Title LEIGH PUTMAN
Asst. Vice President

State of Alabama, County of __JEFFERSON__

I, the undersigned, a notary public in and for said State, hereby certify that __LEIGH PUTMAN__ and __LEIGH ANN FLOYD__, whose names as __Asst. Vice President__ and __Asst. Secretary__, respectively, are signed to the foregoing conveyance, and who are known to me acknowledge before me on this day, that being informed of the contents of the conveyance, they, as such authorized representatives and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this _4TH_ day of __AUGUST__, 20_00_.

Notary Public, Alabama, State at Large
(Seal) Name: _[signature]_
PATRICIA A WREN
My Commission expires: _04-16-02_

This instrument was prepared by __Leigh Ann Floyd__ as an employee of __New South Federal Savings Bank__ located at __210 Automation Way, Birmingham, AL 35210__.

Recorded in MISC BK 89 PG 176, 09/14/2000 02:43PM
Alfonza Menefee, Judge of Probate, Macon County

SPJ Fee 7.00, Recording Fee 9.50, TOTAL 16.50

84
Revised 3/00

State of Alabama
County of Macon

Pool Number:

For value received, the undersigned Alabama Housing Finance Authority does hereby grant, bargain, sell, convey, assign and deliver unto SouthTrust Mortgage Corporation, its successors and assigns, a certain mortgage hereinafter more particularly described, and filed for record as indicated below, together with the Note therein described, and all its interest in and to the land and property conveyed by said mortgage, viz:

| Mortgagor(s) | Book | Page |
|---|---|---|
| ANDREANA RYLES | 498 | 217 |

To have and to hold unto the said SouthTrust Mortgage Corporation, its successors and assigns forever.

In witness whereof, the said Alabama Housing Finance Authority has caused its name to be signed hereto, attested, and its corporate seal affixed by its authorized officers on this date: August 8, 2000

Attest:

R. Stephen Nesmith
Single Family Operations Manager

Alabama Housing Finance Authority

Michael J. King
Single Family Administrator

State of Alabama
County of Montgomery

I, the undersigned, a Notary Public in and for said State, hereby certify that Michael J. King and R. Stephen Nesmith, whose names as Single Family Administrator and Single Family Operations Manager, respectively, of Alabama Housing Finance Authority are signed to the foregoing instrument, and who are known to me, acknowledge before me on this day, that being informed of the contents of this instrument, they as such officers with full authority, executed the same voluntarily for and as the act of such corporation.

Given under my hand and official seal this date: August 8, 2000

This instrument was prepared by:
Tracy Gordon
Alabama Housing Finance Authority
P. O. Box 230909
Montgomery, AL 36123-0909

Julie B. Gray
Notary Public
My commission expires: June 27, 2003

Recorded In Above Book and Page
10/04/2000 11:13:25 AM
Alfonza Menefee
Judge of Probate
Macon County

When Recorded Return To:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

```
MISC        96    55
Recorded In Above Book and Page
04/26/2005 02:26:11 PM
Alfonza Menefee
Judge of Probate
Macon County
Recording Fee        16.50
TOTAL                16.50
```

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SOUTHTRUST MORTGAGE CORPORATION , A NORTH CAROLINA CORPORATION, WHOSE ADDRESS IS 1100 CORPORATE CENTER DRIVE , RALEIGH, NC 27607 , (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **ALABAMA HOUSING FINANCE AUTHORITY , AN ALABAMA CORPORATION, WHOSE ADDRESS IS 2000 INTERSTATE PARK DRIVE SUITE 408 , MONTGOMERY, AL 36109 , ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**.

Said Mortgage made by: **ANDREANA RYLES** and recorded in Real Property in Mortgage Book 498 , page 217 and/or Doc # of the records in the office of the Judge of Probate of MACON County, Alabama.

Dated: 03/01/2005
SOUTHTRUST MORTGAGE CORPORATION

BY: _____
TOM MCKINNON
VICE PRESIDENT


STATE OF FLORIDA  COUNTY OF PINELLAS
I, the undersigned authority, a notary public in and for said County and State, hereby certify that TOM MCKINNON whose name as VICE PRESIDENT of SOUTHTRUST MORTGAGE CORPORATION a corporation, is signed to foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.
Given under my hand THIS 01ST DAY OF MARCH IN THE YEAR 2005

_____
MARY JO MCGOWAN (#DD0236404)   Notary Public
My commission expires: 07/30/2007

Document Prepared By:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

STMAH 2713833
TM349840           form5/FRMAL1

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

**ANDREANA RYLES PHIPHER,**            CASE NO.: 13-30910-DHW-13

**DEBTOR.**

## AFFIDAVIT OF ROB GRIFFITH IN
## SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Before me, the undersigned authority, personally appeared Rob Griffith, who being known to me and by me first duly sworn on oath, does depose and states the following:

1.

My name is Rob Griffith and I am employed as a Foreclosure/Bankruptcy Specialist at Alabama Housing Finance Authority ("Movant") and make this affidavit in such capacity. I have an understanding of how the books, records, and computer systems relating to loan servicing work at Movant. It is the normal course of business for Movant to maintain the records relating to the account of the Debtor within a reasonable time after the transaction they reflect. I have reviewed the books, records and payment processing related to the Note and Mortgage made by Movant described herein, and I am personally familiar with the account of the Debtor as denoted in this affidavit.

2.

The Debtor executed a Note and Mortgage in the principal amount of $89,854.00 on July 21, 2000, which Note is secured by a Mortgage on the real property being more particularly described in Movant's Motion for Relief from Automatic Stay on file and as evidenced by the Note and Mortgage attached to Movant's said Motion. The subject Note with Movant bears a rate of interest as therein provided.

3.

I have prepared a statement of the loan account from the computer and other records that are maintained by Movant in the regular course of its business. The loan is in default for the post petition monthly installments of June 2013 through October 2013 ($792.71 each) plus accumulated late charges of $97.12 (excluding attorney fees and costs). The statement of loan account is as follows:

| Post Petition Due Date | Date Received | Amount $ | Month Applied |
|---|---|---|---|
| 05/13 | 04/16/13 | 800.00 | 05/13 |
| 06/13 | - | - | - |
| 07/13 | - | - | - |
| 08/13 | - | - | - |
| 09/13 | - | - | - |

| Post Petition Due Date | Date Received | Amount $ | Month Applied |
|---|---|---|---|
| 10/13 | - | - | - |

4.

The aggregate amount owed through November 1, 2013 (excluding attorney fees and costs) is:

| | |
|---|---:|
| Principal | $73,541.03 |
| Interest | 6,572.70 |
| Escrow Advance | 2,425.75 |
| Pro rata MIP | 86.22 |
| Corporate Advance | 1,509.90 |
| Late Charges | 322.43 |
| Other Fees | 60.00 |
| **TOTAL** | **$84,518.03** |

I hereby certify under penalties of perjury that the foregoing is true and correct this 16th day of October, 2013.

_____(L.S.)
Rob Griffith

Sworn to and subscribed before me on this the 16th day of October, 2013.

_____
Notary Public
My commission expires:

My commission expires 3/22/2015.